# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICK B. LILLIS DDS, individually and on behalf of all others similarly situated, | Case No. 20-cv-2368 |
| Plaintiff, | COMPLAINT |
| v. | Class Action |
| ASPEN AMERICAN INSURANCE COMPANY, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Patrick B. Lillis, DDS ("Plaintiff"), individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant Aspen American Insurance Company ("Defendant"), states and alleges as follows:

## NATURE OF ACTION

1.      According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount.  Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.      Plaintiff is a dentist and owner of Overland Park Dental Design, LLC, located at 4601 W 109th Street, Suite 318, Overland Park, Kansas.  Plaintiff provides a wide range of dental care and procedures using the most current dental technologies and techniques. As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiff has been forced to greatly reduce his operations.

3.      Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of property loss and business interruption. COVID-19 and the

resulting response by state and local governments have caused physical loss of Plaintiff's property and have interrupted Plaintiff's business. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiff purchased.

4.      Plaintiff is not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic- or virus-related losses. Plaintiff's policy with Defendant is one such policy and exemplifies the broken promises of insurance companies across the country.

5.      This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by the property insurance agreements it sold to Plaintiff and other businesses.

6.      The novel coronavirus – "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

7.      More than 147,000 Americans have died of COVID-19 as of the date of this filing, according to the Centers for Disease Control and Prevention ("CDC").

8.      A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

9.      Aerosols are particularly concerning because unlike droplets, which may be suspended for only a few seconds, aerosols can remain suspended in air for hours, until gravity ultimately forces their descent out of the air and onto a surface.

10.     Consequently, aerosols can spread widely through air flow and even settle on surfaces hundreds of feet away from an infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly become infected, including through contact with an infected surface.

11.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air. According to the New York Times, 95% of the United States population has been under one or more state or local directives to stay at home.

12.     The state and local directives have typically required businesses deemed "non-essential" to close and in-person work to cease. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, establish new procedures to ensure the protection of their workforce and consumers, and provide personal protective equipment to their workforce and consumers. Nevertheless, many such business have had great difficulty retaining employees who fear becoming infected at work.

13.     Plaintiff is based in Johnson County, Kansas, and does business through his dental practice, Overland Park Dental Design, in Overland Park.

14.     Johnson County and the State of Kansas issued stay-at-home orders, as did the neighboring City of Kansas City, Missouri, and State of Missouri (hereafter, "Stay at Home Orders"). These Stay at Home Orders caused the suspension of non-essential and essential businesses.

15.     At least 42 states and countless local governments and public health departments issued substantially similar directives. The purpose of these orders was to mitigate and slow the spread of COVID-19.

16.     The Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business. Plaintiff's business was projected to have not less than $1.4 million in revenue in 2020; however, the Stay at Home Orders and the transmission of COVID-19 resulted in the suspension of Plaintiff's business, which prevented Plaintiff from meeting his revenue projections.

17.     Plaintiff has suffered direct physical loss to the property. Ingress and egress to the property has been limited due to the Stay at Home Orders and transmission concerns. And, according to the World Health Organization ("WHO"), the incubation period for COVID-19 can last up to 14 days. During this period (also known as the "pre-symptomatic" period), infected persons can be contagious, and disease transmission can occur before the infected person shows any symptoms or has any reason to believe they are infected.

18.     Not only is COVID-19 spread by human-to-human transfer, but the WHO has confirmed COVID-19 can exist on contaminated objects or surfaces.[1] According to a study documented in The New England Journal of Medicine, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel surfaces[2] – all of which are materials used by Plaintiff throughout its

---

[1]     *See*     https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations ("[T]ransmission of the COVID-19 virus can occur by direct contact with infected people and indirect contact with surfaces in the immediate environment or with objects used on the infected person").

[2]     *See*     https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces;     see     also https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-viruscausing-covid-19-implications-for-ipc-precaution-recommendations.

facilities and operations. Moreover, the study's results suggest that individuals could become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[3]

19.     Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020. This suggests the virus has circulated in the United States far longer than first reported and previously assumed. It is likely customers, employees, and/or other visitors to the insured property were infected with the coronavirus and thereby caused physical loss and damage to the property.

20.     The transmission of COVID-19 and Stay at Home Orders have otherwise affected Plaintiff's business. For example, customers either cannot access Plaintiff's property due to the Stay at Home Orders or will not access Plaintiff's property for fear of being infected with or spreading COVID-19. The pandemic, and the Stay at Home and similar orders, have similarly restricted Plaintiff's suppliers.

21.     In addition, the spread of COVID-19 has made the insured premises unsuitable for its intended use.

22.     But Plaintiff, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, Plaintiff purchased property insurance from Defendant, bearing Policy No. D012931-16 (the "Policy"), that did not exclude pandemic coverage. A true and accurate copy of the Policy is attached hereto as Exhibit A.

23.     The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in Plaintiff's Policy are materially the same as those policies held by the members of the proposed class.

---

[3] *Id.*

24.    The Policy is an "all-risk" policy meaning It covers "all direct physical damage to covered property ... caused by or resulting from any covered cause of loss." Exhibit A at 29. As defined by the Policy, "'Covered Causes of Loss' means ALL RISK OF DIRECT PHYSICAL LOSS except as excluded or limited" by the Policy (*id.* at 46), and "'Damage' means partial or total loss of or damage to" covered property. *Id.* at 47

25.    As set forth below, the Policy also provides coverage for:

    a.    losses sustained due to the necessary suspension of operations ("Practice Income" coverage) (*id.* at 31);

    b.    interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (*id.* at 35);

    c.    expenses incurred to minimize suspension of business ("Extra Expense" coverage) (*id.* at 32);

    d.    necessary expenses to reduce the amount of damage ("Expenses to Reduce Damage" coverage) (*id.* at 35); and

    e.    expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 50-51).

26.    In addition, the Policy requires Plaintiff to "[t]ake all reasonable steps to protect the covered property from further damage" when a loss occurs, which in this instance required Plaintiff to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiff's premises. Exhibit A at 50.

27.    On or about May 7, 2020, Plaintiff sought coverage related to COVID-19 and notified Defendant of loss covered by the Policy. In response to Plaintiff's notice of claim, Defendant has failed to render a coverage decision and requested additional information beyond that required by the Policy to effectuate delay and denial of Plaintiff's claim. Upon information and belief, Defendant has uniformly refused to pay its insureds under its standard policy for losses

related to COVID-19. Defendant is in breach of its obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim.

28.    Defendant has caused material harm to Plaintiff and the proposed class by refusing coverage under the Policy.

29.    On behalf of himself and the class, Plaintiff seeks to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## PARTIES

30.    Plaintiff Patrick B. Lillis, DDS, is a citizen and resident of Kansas.

31.    Defendant Aspen American Insurance Company, is a Texas corporation, with its principal place of business in Rocky Hill, Connecticut.

## JURISDICTION AND VENUE

32.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

33.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division. The Policy at issue covers Plaintiff's facilities located in the State of Kansas, and Plaintiff purchased the Policy from an insurance broker located in the State of Kansas.

## FACTUAL BACKGROUND

34.    COVID-19 and the Stay at Home Orders forced Plaintiff to suspend its operations. Plaintiff's facility is located in Overland Park, Johnson County, Kansas. There have been more than 4,800 confirmed cases of COVID-19 in Johnson County, Kansas, as of the date of this filing.

35.    Effective at 12:01 a.m. on March 24, 2020, Johnson County, Kansas issued a stay-home order to mitigate the spread of COVID-19 in Johnson County on the basis of a confirmed outbreak and person-to-person spread of COVID-19 in the United States, Kansas, and Johnson County.[4] The Johnson County Order specifically recognized that COVID-19 spreads easily from person to person and may result in serious illness or death. It further identified COVID-19 as a public disaster affecting life, health, *property*, and the public peace. Johnson County issued the Order to mitigate and slow the spread of COVID-19 in the community.

36.    Effective at 12:01 a.m. on March 28, 2020, the Kansas Governor issued an executive order establishing a statewide "stay-home" order in conjunction with the Kansas Essential Function Framework for COVID-19 response efforts, superseding the Johnson County Order. The Kansas order directed all Kansans to stay in their homes to slow the spread of COVID-19.[5] The purpose of the Kansas order was to "mitigate the spread of COVID-19 throughout Kansas" as it recognized the confirmed presence of positive cases in 31 counties.[6] On April 16, 2020, the Kansas Order was extended to May 3, 2020.[7]

37.    Although the Kansas and Johnson County Orders have been lifted, Plaintiff continues to suffer losses due to COVID-19.

38.    At least 42 states and countless local governments have issued substantially similar orders and directives, the purpose of which was to mitigate and slow the spread of COVID-19.

---

[4]      https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[5]      https://www.coronavirus.kdheks.gov/DocumentCenter/View/873/Essential-Activities-and-Essential-Functions-PDF---4-15-20

[6]      https://governor.kansas.gov/wp-content/uploads/2020/03/EO20-16.pdf

[7]      https://www.coronavirus.kdheks.gov/DocumentCenter/View/132/Executive-Order-20-24-Statewide-Stay-Home-Order-PDF---4-16-20

39.     According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets, or even by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[8] The virus can live on surfaces for several days if not longer.[9]

40.     In addition, a number of scientific publications have reported finding COVID-19 in the air. The New England Journal of Medicine reported its finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[10]

41.     According to another study published in the New England Journal of Medicine, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel.[11]

42.     All of these materials are used by Plaintiff throughout its facilities and operations.

43.     The study's results indicate that individuals can become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.

44.     A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of

---

[8]      https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[9]      https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[10]     https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[11]     https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces

Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[12]

45.    An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face masks, health workers' personal protective equipment, and air vents.[13]

46.    The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[14]

47.    Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[15]

48.    Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[16]

---

[12]    https://www.nature.com/articles/d41586-020-00974-w

[13]    https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[14]    https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[15]    https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

[16]    https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

49.    Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for hours or more, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by an aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

50.    The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about aerosol risk from COVID-19.

51.    A 2014 analysis of SARS published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[17] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[18]

52.    The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a viral cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

---

[17]    https://academic.oup.com/cid/article/58/5/683/365793
[18]    *Id.*

53.    State and local governments have determined that without the stay at home orders, COVID-19 could spread rampant throughout the community.

54.    The Stay at Home Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

    a.    the Johnson County, Kansas Order stated that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space.[19] (emphasis added);

    b.    the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which stated that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[20] (emphasis added).

55.    In order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiff paid all premiums required by the Policy.

56.    Plaintiff is the Named Insured under the Policy, which remains in force.

57.    Defendant is the effective and liable insurer of the Policy and policies meeting the class definition.

58.    Generally, under property insurance policies like those issued by Defendant to Plaintiff and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

---

[19]    https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20 Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[20]    http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20 Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

59.    The Policy is an "all-risk" policy meaning It covers "all direct physical damage to covered property … caused by or resulting from any covered cause of loss." Exhibit A at 29. As defined by the Policy, "'Covered Causes of Loss' means ALL RISK OF DIRECT PHYSICAL LOSS except as excluded or limited" by the Policy (*id*. at 46), and "'Damage' means partial or total loss of or damage to" covered property. *Id.* at 47

60.    The Policy does not exclude or limit coverage for losses from a virus, like COVID-19, or pandemics.

61.    The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

62.    In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

63.    Despite the availability of a specific exclusion for viruses, Plaintiff's Policy contains no such exclusion. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

64.     Because damage due to viruses constitutes physical damage and loss under the Policy, and the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy. Moreover, to mitigate further losses, as required by the Policy, Plaintiff suspended operations when officials announced that COVID-19 posed a risk of causing further physical damage and loss.

65.     The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions:

66.     Defendant is obligated to pay for actual loss of "**practice income**" sustained due to the necessary suspension of Plaintiff's practice caused by direct physical damage "caused by or resulting from a **covered cause of loss**." Exhibit A at 31. "Practice Income" means net income (net profit or loss before income taxes) that would have been earned or incurred, as well as continuing normal operating expenses, including payroll. *Id.* at 48. Coverage lasts during the "period of restoration" – beginning "24 hours immediately following" the direct loss and running through the date when the property should be repaired, rebuilt or replaced. *Id.* Plaintiff has suffered lost Practice Income because it suspended operations of its business due to COVID-19.

67.     Defendant also agreed to provide coverage from an interruption to business caused by an order from a **"Civil Authority."** Exhibit A at 35. Specifically, Defendant agreed to "pay for the actual loss of **practice income**" that Plaintiff sustained "caused by action of civil authority that prohibits access to" Plaintiff's premises "due to the direct physical damage to property, other than" Plaintiff's premises, "caused by or resulting from any **covered cause of loss**." *Id.* Access was restricted to Plaintiff's premises due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders.

68.    Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 32. Extra Expenses are expenses "necessarily incurred … during the **period of restoration** to continue normal services and operations which are interrupted due to **damage** by a **covered cause of loss**." *Id.* Plaintiff has suffered Extra Expenses because it suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

69.    The Policy also provides coverage for "**Expenses to Reduce Damage**," pursuant to which Defendant agreed to pay any necessary expenses incurred to "reduce the amount of **damage**." Exhibit A at 35. Plaintiff has incurred expenses to reduce damage to its premises, because it suspended operations due to COVID-19 to prevent physical damage to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

70.    Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to "[t]ake all reasonable steps to protect the covered property from further **damage** by a **covered cause of loss**," and "keep a record of your expenses for emergency and temporary repairs, for consideration in settlement of the claim" in the event of a loss or damage. Exhibit A at 50-51. Plaintiff has taken such steps by, for example, complying with the Stay-at-Home Orders.

71.    Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's operations were suspended, and it lost revenue and business opportunities because it was unable to provide dental services on its premises.

72.    Plaintiff submitted a claim to Defendant for coverage under the Policy, but Defendant has either denied Plaintiff's claim or requested information not required to evaluate the claim in order to effectuate delay and denial.

## CLASS ACTION ALLEGATIONS

73.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following nationwide classes:

        a.    **Nationwide Declaratory Judgment and Injunctive Class.**  All businesses subject to a Stay at Home Order that are covered by one of the Defendant's policies which contains **Practice Income, Civil Authority, Extra Expense, Expenses to Reduce Damage,** and/or **Sue and Labor** coverage on terms similar to the Plaintiff's policy ("Policies") which were in effect during the COVID-19 pandemic.

        b.    **Nationwide Breach Class.**  All policyholders of Defendant who made a claim and were denied coverage under one of Defendant's Policies due to COVID-19.

        c.    **Kansas Subclass.** All policyholders who purchased one of Defendant's Policies in Kansas and were denied coverage due to COVID-19.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

74.    Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

75.    **Numerosity**. COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, hundreds or more policies

issued with the relevant provisions.  Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.  Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Kansas Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Kansas Subclass members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

76. **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a. Do the Policies cover losses resulting from the COVID-19 pandemic?

b. Do the Policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

c. Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d. Does the **Practice Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay-at-Home Orders?

e. Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay-at-Home Orders issued by state and local governments?

f. Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiff and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

g. Does the **Expenses to Reduce Damage** coverage of the Policies cover losses incurred to minimize the harm to Plaintiff and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

h. Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay-at-Home Orders?

i.   Has Defendant breached its Policies by refusing to cover COVID-19 related losses?

j.   Are Class members entitled to reasonable attorneys' fees and expenses?

77.   **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of business are impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

78.   **Typicality.** Plaintiff's claims are typical of those of the Classes as Plaintiff was subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

79.   **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Kansas Subclass. The presentation of separate actions by individual Class members and Kansas Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

80.   **Adequacy**. Plaintiff is an adequate representative of the Class and Kansas Subclass because he is a member of the Class and his interests do not conflict with the interests of those he seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and its counsel, who have extensive experience prosecuting complex class litigation.

81.     **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

82.     **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiff reserves the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following Policy provisions: **Practice Income, Civil Authority, Extra Expense, Expenses to Reduce Damage** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – PRACTICE INCOME
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Kansas Subclass)

83.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

84.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

85.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

86.     Plaintiff contends that Defendant has breached the Policies in the following respects:

    a.     Plaintiff and the class have suffered losses covered by the Practice Income coverage in the Policies.

19

b.    Defendant is obligated to pay Plaintiff and the class for those losses.

c.    Defendant has failed to pay Plaintiff and the class for those losses.

87.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

88.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Practice Income provisions of the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – PRACTICE INCOME
### (On behalf of Nationwide Breach Class and Kansas Subclass)

89.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

90.    Plaintiff and the class purchased property coverage policies from Defendant.

91.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

92.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

93.    Plaintiff and the class have sustained losses under the Practice Income coverage in the Policies arising from COVID-19 and associated state and local Stay at Home orders.

94.    Defendant has not agreed to pay the claim for Practice Income or requested a proof of loss and denied coverage.

95.     Defendant has denied claims for Practice Income related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

96.     As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Kansas Subclass)

97.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

98.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

99.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

100.    Plaintiff contends that Defendant has breached the Policies in the following respects:

    a.     Plaintiff and the class have suffered losses covered by the Civil Authority coverage in the Policies.

    b.     Defendant is obligated to pay Plaintiff and the class for those losses.

    c.     Defendant has failed to pay Plaintiff and the class for those losses.

101.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policies so that future controversies may be avoided.

102.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority

coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT IV: BREACH OF CONTRACT – CIVIL AUTHORITY
### (On behalf of Nationwide Breach Class and Kansas Subclass)

103.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

104.    Plaintiff and the class purchased property coverage policies from Defendant.

105.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

106.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

107.    Plaintiff and the class have sustained a loss under the Civil Authority coverage in the Policies arising from COVID-19 and associated state and local Stay-at-Home orders.

108.    Defendant has not agreed to pay the claims for Civil Authority coverage or requested a proof of loss and denied coverage.

109.    Defendant has denied claims for recovery under the Civil Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

110.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Kansas Subclass)

111.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

112.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

113.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

114.    Plaintiff contends that Defendant has breached the Policies in the following respects:

      a.    Plaintiff and the class have suffered losses covered by the Extra Expense coverage in the Policies.

      b.    Defendant is obligated to pay Plaintiff and the class for those losses.

      c.    Defendant has failed to pay Plaintiff and the class for those losses.

115.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

116.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE
### (On behalf of Nationwide Breach Class and Kansas Subclass)

117.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

118.    Plaintiff and the class purchased property coverage policies from Defendant.

119.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

120.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

121.    Plaintiff and the class have sustained a loss under the Extra Expense coverage in the Policies arising from COVID-19 and associated state and local Stay-at-Home orders.

122.    Defendant has not agreed to pay the claim for Extra Expense or requested a proof of loss and denied the claim.

123.    Defendant has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

124.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – EXPENSES TO REDUCE DAMAGE
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Kansas Subclass)

125.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

126.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

127.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

128.    Plaintiff contends that Defendant has breached the Policies in the following respects:

    a.    Plaintiff and the class have suffered losses covered by the Extra Expenses to Reduce Damage coverage in the Policies.

    b.    Defendant is obligated to pay Plaintiff for those losses.

    c.    Defendant has breached its obligation to pay the Plaintiff and the class for those losses.

129.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

130.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expenses to Reduce Damage coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

**COUNT VIII: BREACH OF CONTRACT – EXTRA EXPENSES TO REDUCE DAMAGE**
**(On behalf of Nationwide Breach Class and Kansas Subclass)**

131.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

132.    Plaintiff and the class purchased property coverage policies from Defendant.

133.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

134.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims.    Alternatively, Defendant has

waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

135.    Plaintiff and the class have sustained a loss under the Extra Expenses to Reduce Damage coverage in the Policies arising from COVID-19 and associated state and local Stay-at-Home orders.

136.    Defendant has not agreed to pay the claim under the Extra Expenses to Reduce Damage coverage or requested a proof of loss and denied the claim.

137.    Defendant has denied claims for recovery under the Extra Expenses to Reduce Damage coverage related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

138.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT IX: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Kansas Subclass)

139.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

140.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

141.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

142.    Plaintiff contends that Defendant has breached the Policies in the following respects:

        a.    Plaintiff and the class have suffered losses covered by the Sue and Labor provision in the Policies.

   b.  Defendant is obligated to pay Plaintiff and the class for those losses.

   c.  Defendant has not paid for those losses and is in breach.

143. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

144. Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

**COUNT X: BREACH OF CONTRACT – SUE AND LABOR**
**(On behalf of Nationwide Breach Class and Kansas Subclass)**

145. The preceding paragraphs are incorporated by reference as if fully alleged herein.

146. Plaintiff and the class purchased property coverage policies from Defendant.

147. The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

148. Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

149. Plaintiff and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from COVID-19 and associated state and local Stay at Home orders.

150. Defendant has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss and denied the claim.

151.    Defendant has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

152.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a.    That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b.    For a judgment against Defendant for the causes of action alleged against it;

c.    For compensatory damages in an amount to be proven at trial;

d.    For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

e.    For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy;

f.    For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.    For Plaintiff's attorney's fees;

h.    For Plaintiff's costs incurred; and

i.    For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: July 29, 2020                    Respectfully submitted,

**MILLER SCHIRGER LLC**

*s/ John J. Schirger*

| | |
|---|---|
| John J. Schirger | D. Kan. # 78228 |
| Matthew W. Lytle | D. Kan. # 78109 |
| Joseph M. Feierabend | D. Kan. # 78350 |

4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone:     (816) 561-6500
Facsimile:     (816) 561-6501
Email:        jschirger@millerschirger.com
Email:        mlytle@millerschirger.com
Email:        jfeierabend@millerschirger.com

**STUEVE SIEGEL HANSON LLP**

| | |
|---|---|
| Patrick J. Stueve | KS Bar # 13847 |
| Bradley T. Wilders | D. Kan. # 78301 |
| Curtis Shank | KS Bar # 26306 |

460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:        stueve@stuevesiegel.com
Email:        wilders@stuevesiegel.com
Email:        shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison                    D. Kan. # 78360
911 Main Street
PO Box 220
Lexington, Missouri 64067
Telephone:    (660) 259-6175
Facsimile:    (660) 259-4571
Email:        kent@lelaw.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo         KS Bar # 22326
Dawn M. Parsons            KS Bar # 16346
Michael F. Barzee          KS Bar # 27217
Rachael D. Longhofer        KS Bar # 25451
2001 Wyandotte Street
Kansas City, MO 64108
Telephone:    816-931-0500
Facsimile:    816-931-5775
Email:        rlombardo@sls-law.com
Email:        jmyers@sls-law.com
Email:        dparsons@sls-law.com
Email:        mbarzee@sls-law.com
Email:        rlonghofer@sls-law.com

*Attorneys for Plaintiff and the Proposed Classes*